IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JAHMAR D. SMITH,

        Petitioner,

v.                                    CIVIL ACTION NO. 2:10cv35
                                          (Judge Maxwell)

JAMES N. CROSS, Warden,

        Respondent.

**REPORT AND RECOMMENDATION**

**I. BACKGROUND**

On March 17, 2010, the *pro se* petitioner, an inmate at USP Hazelton in Bruceton Mills, West Virginia, filed an Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241, in which he seeks an order from this court directing the Bureau of Prisons ("BOP") to remove an incident report from its files. On that same date, the petitioner paid the required $5.00 filing fee. By Order entered March 18, 2010, the court directed the respondent to show cause why the petition should not be granted. On April 15, 2010, the respondent filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. On April 16, 2010, a Roseboro Notice was issued and on May 7, 2010, the petitioner filed a response.

**II. FACTS**

The petitioner is a federal inmate committed to the BOP serving a 165 month sentence with a five year term of supervised release imposed by the United District Court for the Southern District of New York on April 17, 2008, for violating 18 U.S.C. § 1962(c) "Racketeering." (Doc. 9-2, pp.

1

1-3). The petitioner was designated to the USP Hazelton on June 3, 2008. (Doc. 9-2, p. 7).

On July 23, 2008, Counselor Wingo ("Wingo") was entering her office and was approached by the petitioner at 1:51 p.m. As a result of the petitioner's actions that followed, Wingo prepared an incident report that same date at 4:51 p.m. The report indicated that the petitioner asked Wingo whether he had prepared his visiting paperwork. Wingo replied that she had not been able to do any visiting paperwork as a result of the lock-down that the institution had been operating under at that time. Wingo then told the petitioner that he would receive a copy of it as soon as it was done. The petitioner turned around to walk away and stated, "This is f***ing bull****." Wingo called him back into her office, and the petitioner began stating that she did not need to talk to him that way. When Wingo informed the petitioner that she was calling the Lieutenant's office, the petitioner leaned over her desk and "in an aggressive and threatening manner, with his chest pushed out and hands held up over his head, yelled, "F*** you and them (sic) I ain't worried about it." The Incident Report indicates that Wingo instructed the petitioner to sit down. He again stated, "F*** you" and walked out of her office. Although Wingo called to him to return several times, rather than to so, he continued to walk away, repeatedly stating, "F*** you." Wingo then radioed for the Compound Officer to assist her. She then locked her office and tried to find the petitioner. Control called for assistance, and they began locking down. Wingo finally found the petitioner in his cell, and he was removed from the unit by staff. (Doc. 9-2, p. 8). (Doc. 14-1, p. 9). The petitioner received a copy of the Incident Report on July 30, 2008, which advised him that he was being charged with threatening a staff member with bodily harm. (Id.) A Unit Disciplinary Committee ("UDC") hearing was held on August 8, 2008. Due to severity of the Incident Report, the UDC was unable to sanction the petitioner, and accordingly, the matter was referred to the Disciplinary Hearing Officer ("DHO") with a recommendation that the petitioner receive 27 days loss of Good Conduct Time, 90 days loss

of privileges, and 90 days loss of commissary. (Id). (Doc. 14-1, p. 12). The DHO hearing was conducted on September 30, 2008, and the petitioner was given advance notice of the hearing on July 30, 2008. (Doc. 9-2, p. 13). After considering all the evidence, the DHO found that the petitioner did commit the prohibited act of Code 299, Conduct which Disrupts Security or Orderly Running of a BOP Facility, Most Like Threatening Another with Bodily Harm or Any Other Offense, Code 203. The DHO sanctioned the petitioner to the loss of 27 days of GCT, 30 days Disciplinary Segregation, 90 days loss of commissary privileges, and 90 days loss of telephone privileges. (Doc. 9-2, pp. 7-8).

### III. CONTENTIONS OF THE PARTIES

In the instant petition, the petitioner challenges the validity of his disciplinary proceeding and presumably, the resulting loss of GCT. Specifically, the plaintiff alleges that he did not receive a copy of the incident report until seven days after the alleged incident and did not receive a UDC hearing until August 18, 2008. Accordingly, the petitioner argues that his due process rights were violated because BOP policy requires that: (1) the incident report be delivered within 24 hours of the time staff became aware of the inmate's involvement in the incident, and (2) the UDC hearing must ordinarily take place within three working days of the time that staff become aware of the inmate's involvement in the incident.(Doc. 1-3, p. 16).

In response to the petition, the respondent argues that the petitioner is not entitled to due process procedural protections in a UDC or DHO hearing. In addition, the respondent argues that the petitioner received all the due process required by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539 (1974).

In his reply to the response, the petitioner reiterates his argument that failure to receive the incident report within 24 hours violated his due process rights. The plaintiff also makes allegations

3

that Wingo was drunk on the date of the incident and either forgot to write the incident report, or she "just could not focus on writing the incident report based on the fact that she has complete knowledge that the petitioner is completely innocent of the charges she claimed." (Doc. 12, p. 9). The petitioner also points out that there is a discrepancy in the record regarding Wingo's claim that she rewrote the incident report and maintains that there is no justification for the delay in his receiving the report.

## IV. STANDARD OF REVIEW

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions"

or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. SUMMARY JUDGEMENT**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal

Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## V. ANALYSIS

Prison disciplinary proceedings are not criminal prosecutions, and prisoners do not enjoy "the full panoply of due process rights due a defendant in such [criminal] proceedings. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Where, as here, a prison disciplinary hearing may result in the loss of good time credit, Wolff holds that due process requires the following:

1. giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

2. providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

3. allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

6

4. permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5. providing impartial fact finders.

Id. at 564-571. The information before the Court reveals that the petitioner was provided due process as contemplated by Wolff.

First, the petitioner received written notice of the charges at least 24 hours in advance of the DHO hearing. More particularly, the petitioner received a copy of the incident report on July 30, 2008, and the DHO hearing was on September 30, 2008.

Second, the petitioner was provided a written statement by the DHO as to the evidence relied on and the reasons for the disciplinary action. The DHO report, dated October 31, 2008, notes that the specific evidence relied upon to support the finding that he willfully violated Code 299, Conduct which Disrupts Most Like 203 was the reporting officer's statement. In addition, the report explains the reason for the disciplinary action. More specifically, the report states that

> "[t]he action/behavior on the part of any inmate to demonstrate disruptive conduct which threatens or causes any person to feel threatened prevents that person from completing their assignments throughout the day without constantly watching behind themselves. In the past, when inmates have made threatening statements or gestures to others, they have carried out the threats. This behavior cannot and will not be tolerated at this facility. The sanction(s) imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions/ behavior.

(Doc. 9-2. pp. 14-16).

Third, the petitioner was advised of his right to call witnesses and present documentary

evidence. While he did not produce any evidence, the three witnesses he requested, appeared and testified

Fourth, the petitioner waived his right to a staff representative, and finally, the petitioner was provided an impartial decision-maker. In accordance with BOP regulations, the DHO did not act as the reporting official, investigating officer, UDC member, or witness and did not play a role in referring the charges.[1]

Not only was the petitioner provided all the due process rights required by Wolff, the findings made by the DHO are sufficient to support the finding that the petitioner violated Prohibited Act Code 299. The Supreme Court held in Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985) that "[t]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." The Supreme Court further stated:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

In reaching her decision, the DHO considered the eyewitness account of Wingo, who provided a written testimonial in the Incident Report, as well as the Incident report and Investigation. After considering all of the evidence the DHO found that the petitioner had willfully violated Code 299, Conduct Which Disrupts Most Like 203. Although the petitioner told the DHO the report was partially true and he did approach Wingo about his visiting list, he denied cursing at her. However, none of his witnesses heard the conversation between Wingo and the petitioner, nor observed what

---

[1] See 28 C.F.R. § 541.16(b).

happened inside her office. The DHO noted that she considered the petitioner's denial and his explanation but was not convinced by it. Furthermore, the DHO explained that although the petitioner did not verbalize a threat to Wingo, his actions were an implied threat, and any reasonable person would have felt threatened by Wingo's description of his conduct. (Doc. 9-2, p. 15). As previously noted, it is not the Court's prerogative to make an independent assessment of the credibility of the witnesses or weigh the evidence. So long as there is evidence to support the DHO's determination, it must stand. See Superintendent at 455-56. Here, the testimony and documents considered by the DHO clearly provided "some evidence" from which a rational conclusion could be drawn that the petitioner committed the act as charged.

To the extent that the petitioner argues that he was denied due process because he did not receive a copy of the incident report within twenty-four hours, nor have his UDC hearing within three days of the incident, the same is without merit. BOP Policy Statement 5270.07 does indeed provide for time limits in the disciplinary process which include the provision that: (1) ordinarily staff will provide the inmate a copy of the incident report within 24 hours and (2) inmates must ordinarily be given an initial hearing within three work days.[2] However, the fact that the petitioner did not receive the incident report until seven days after the incident occurred, and did not have his UDC hearing within five working days does not present a denial of the petitioner's due process guarantees. See Griffin v. Ebbert, 2008 WL 2036817 (M.D. Pa. 2008) (A prison's failure to comply with its own procedures will not result in a due process violation as long as the inmate is provided with the process he is due under Wolff). As previously noted, the petitioner was clearly provided with the process he is due under Wolff.

---

[2]See Policy Statement 5270.07 available at www.bop.gov.

## VI. RECOMMENDATION

Based on the foregoing, the undersigned recommends that respondent's Motion to Dismiss, or in the Alternative, for Summary Judgement (Doc. 8) be **GRANTED**, the petitioner's §2241 petition be **DENIED and DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to prove a copy to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: 6-11-2010

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE